UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **MBS MANAGEMENT SERVICES, INC.** | **07-12151** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| **CLAUDE LIGHTFOOT, TRUSTEE FOR THE MBS UNSECURED CREDITORS' TRUST** | ADVERSARY NO. |
| | **09-1158** |
| PLAINTIFF | |
| VERSUS | |
| **MXENEGY ELECTRIC, INC.** | |
| DEFENDANT | |

## **MEMORANDUM OPINION**

Claude Lightfoot, as trustee for the MBS Unsecured Creditor's Trust, ("Trustee"), filed this adversary proceeding seeking to recover $156,345.93 from MXEnergy, Inc. ("MX") in preferential or fraudulent transfers.

MX filed the instant Motion for Summary Judgment alleging that the payments cannot be recovered because they were "settlement payments made to a forward contract merchant under a forward contract."[1]

### **I. Standard for Summary Judgment**

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.[2] The Court must view the evidence introduced

---

[1] Pl. 26, p. 2.

[2] *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).

and all factual inferences in the light most favorable to the party opposing summary judgment.[3]

**II. Facts**

On December 12, 2005, MBS Management Services, Inc ("MBS") and Vantage Power Services, LP ("Vantage") entered into a Commerical Agreement ("the Contract") that provided that Vantage would "supply the full requirements" to MBS, and MBS would "receive and take its full electric requirements from Vantage."[4]

The Contract provided that the "Energy Charges will be calculated by multiplying the total monthly-consumed kilowatt hours multiplied by the Energy Price listed in the Price Exhibit." The Price Exhibit set a term of twenty-four (24) months for the Contract and listed the price as $.0119 per kWh. On April 16, 2007, Vantage and MX entered into an Asset Purchase Agreement whereby Vanatage transferred to MX all of its "electrical service agreements, " including the Contract.[5]

On November 5, 2007, MBS filed a voluntary Petition For Relief under Chapter 11 of the Bankruptcy Code. Following confirmation of its plan, MBS transferred all rights to avoid preferential or fraudulent conveyances to a litigation trust for prosecution. Trustee instituted several fraudulent conveyance and preference actions against various parties including MX.

**III Law and Analysis**

MX has filed this Motion for Summary Judgment asserting that 11 U.S.C. §546(e) prohibits Trustee from avoiding payments made on the Contract because it is a forward contract. Trustee has

---

[3] *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

[4] Pl. 26, Exh. A.

[5] Pl. 26, Exh. B.

responded by arguing that the Contract is not a forward contract.

The Contract was for the supply of electricity. The parties agree that a set price was provided by the Contract but the actual amount of electricity to be supplied was open and subject to the demands of MBS. The Contract spanned a term of twenty-four (24) months and the first date of delivery occurred more than two (2) days following its execution. The parties also agree that the Contract was not regulated by a commodity exchange or contract board of trade.

Although these facts are not in dispute, disagreement between the parties centers on the following issues which can be summarized:

1. Is the sale of electricity a commodity?

2. Is MX a forward contract merchant?

3. If the Contract was for the sale of a commodity by a forward contract merchant, does it otherwise meet the requirements of a "forward contract"?

The facts surrounding almost all the above issues are not in dispute. However, interpretation of the relevant statutes is contested. As a result, most of the issues are ripe for summary judgment, but as set forth below, one issue is subject to material disagreement based on facts not in the record, and thus summary judgment cannot be granted.

**A. Is Electricity a Commodity?**

Trustee argues that electricity is not a commodity, but a "good." As such, the Contract is not a commodity contract, but a sale or supply contract. Trustee cites no law in support of his proposition. Instead, Trustee relies on multiple references by MX in its pleadings which describe the Contract as a sale of goods or a "commercial contract." Trustee fails to explain why a sale of

3

goods or a commercial agreement is not a commodity contract or why any of these references results in the elimination of electricity as a commodity.

11 U.S.C.§ 761(8) incorporates the definition of "commodity" as that provided in the Commodity Exchange Act ("the Act").[6] Section 1(a) of the Act defines a commodity as:

> The term "commodity" means wheat, cotton, rice, oats, barley, rye, flaxseed, grain sorghums, mill feeds, butter, eggs, Solanum Tuberosum (Irish potatoes), wool, wool tops, fats and oils (including lard, tallow, cottonseed oil, peanut oil, soybean oil, and all other fats and oils), cottonseed meal, cottonseed, peanuts, soybeans, soybean meal, livestock, livestock products, and frozen concentrated orange juice, and all other goods and articles, except onions as provided in section 13-1 of this title, and all services, rights, and interests in which contracts for future delivery are presently or in the future dealt in.[7]

Jurisprudence under the Act consistently treats electricity as a commodity.[8] Thus, no serious debate exists on the issue of electricity's status as a commodity.

### B. Is MX a Forward Contract Merchant?

Trustee argues that several district and bankruptcy courts have declined to extend the safe harbor provisions of § 546(e) to purely private securities transactions that do not involve a financial

---

[6] *See,* 11 U.S.C. §§ 761 (1) and (8).

[7] 7 U.S.C. § 1(a)(4).

[8] *See, U.S. v. Reliant Energy Services, Inc.*, 420 F.Supp.2d 1043 (N.D.Cal. 2006). *See also, In re Nat'l Energy & Gas Transmission, Inc.*, 492 F.3d 297, 299 (4th Cir. 2007); *In re Erving Industries, Inc.*, 2010 WL 1416148 (Bankr.D.Mass. 2010); *In re Mirant Corp.*, 334 B.R. 800, 805 (Bankr.N.D.Tex. 2005); *In re Enron Corp.*, 274 B.R. 327, 334 (Bankr.S.D.N.Y. 2002); *In re Olympic Natural Gas*, 258 B.R. 161, 163 (Bankr.S.D.Tex. 2001); *In re Camelot Motors Corp.*, 86 B.R. 520, 523 (Bankr.W.D.Mich. 1988); *In re Charles Town Light & Power Co.*, 183 F. 160, 163 (D.C.W.Va. 1910).

intermediary.[9] Trustee maintains that MX is not a financial intermediary, and therefore, the Contract is not of a type contemplated by the statute.

In its Motion and Affidavit supporting the relief requested, MX has alleged that it is a forward contract merchant. Specifically, the Affidavit of Jeffrey A. Mayer, President and Chief Executive Officer of MX, establishes that MX "is and always has been a commercial corporate party which is in business principally to deal in energy and commodities."[10] In essence, MX is a market maker or middle man for sales of electric power between producer and end user. As such, MX is exactly the type of financial intermediary contemplated by the Bankruptcy Code.

Trustee responds to MX's position by arguing that MX has not provided sufficient proof of its status as a forward contract merchant. However, Trustee has offered no evidence to refute the allegations presented by MX's Affidavit.

> [A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth facts showing that there is a genuine issue for trial.[11]

In addition, Trustee argues MX is not a forward contract merchant because it did not participate as a merchant on a board of trade and its business with MBS was limited to a single contract rather than a series of contracts. Trustee fails to provide any legal support for this

---

[9] *See, Kapila v. Espirito Santo Bank*, 374 B.R. 333 (Bankr. S.D.Fla. 2007); *Norstan Apparel Shops, Inc. v. Lattman*, 367 B.R. 68 (Bankr.E.D.N.Y. 2007); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998); *Jewel Recovery L.P. v. Gordon*, 196 B.R. 348 (N.D. Tex. 1996); and *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655 (N.D.Ill. 1991).

[10] Pl. 26, Exh. D, ¶ 11.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

interpretation of the statute and a plain reading of the relevant provisions leads to a contrary conclusion.

Section 546(e) provides a safe harbor for contracts *not* regulated by a board of trade. It is illogical to graft a requirement that the parties to those contracts be board of trade members when the contracts themselves are not subject to board of trade regulation. The Court holds that in order for section 546(e) to apply, neither party to the contract need be a board of trade member.

The definition of forward contracts does not require that they be in a series, quite the opposite. Section 101(25) provides that a forward contract includes a single contract, any combination of agreements, or a master agreement. Nothing in the statute requires MX to execute a series of agreements with MBS to qualify as a forward contract merchant.

For these reasons, the Court finds that MX is a forward contract merchant.

### C. Is the Commercial Agreement A Forward Contract?

#### 1. Statutory Construction

Finally, MBS argues that the Contract is not a forward contract within the meaning of the Bankruptcy Code. 11 U.S.C. §101(25) defines a forward contract as:

> [A] contract (other than a commodity contract, as defined in section 761) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest, which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into ...

Broken into its elements, 11 U.S.C. §101(25) requires:

   a. a sale of a commodity;

   b. with a maturity date more than two days after execution;

  c. by a forward contract merchant;

  d. not otherwise subject to the rules or market of a contract board of trade.

For reasons previously explained, the Contract is for the sale of a commodity and MX is a forward contract merchant. The parties have stipulated that the Contract had a delivery or performance date more than two (2) days after the Contract was executed. This leaves the fourth element.

Trustee argues that the fourth criteria for a forward contract, that the contract be regulated outside the rules or market of a contract board of trade, is in error. Trustee avers that in order for a contract to be a "forward contract" it must be *subject to* the rules or regulations of a contract market or board of trade. A plain reading of the statute establishes otherwise.

"The term 'forward contract' means--- a contract *(other than a commodity contract, as defined in section 761)* for the... sale... of a commodity ..."[12] "Commodity contract" means (A)... contract for the purchase and sale of a commodity for the future delivery on, or subject to the rules of, a contract market or board of trade."[13]

The statute disposes of Trustee's position. Because a forward contract is defined as a contract *not* governed by the rules of a board of trade, the absence of board regulation is required, not the other way around.[14]

  Trustee's last ground for opposition involves judicial and legislative interpretation of what constitutes a forward contract.

---

[12] 11 U.S.C. § 101(25) (emphasis added) .

[13] *See,* U.S.C. § 761(4).

[14] *See, In the Matter of Olympic Natural Gas Co.*, 294 F.3d 737 (5th Cir. 2002).

### 2. Judicial Interpretation

Despite reference to the Commodities Exchange Act and several definitions found in the Bankruptcy Code, the specifics of what constitutes a forward contract are limited. As discussed above, the statute requires that the contract be for the sale of a commodity, in the future. It must not be regulated by a commodity exchange or contract board of trade and must be executed by a forward contract merchant. Beyond these few requirements, the details of the contract are subject to debate.

Trustee argues that the statute was not designed to protect ordinary supply or sale contracts for future commodities to end users but contracts traded between merchants for hedging or financial risk diversion. Since even supply contracts may have hedging characteristics, Trustee argues that they be distinguished from purely financial transactions by actual delivery. In essence, Trustee asserts that because actual delivery of the product or commodity is contemplated by a supply contract, § 546(e) should not apply.

*Olympic*, the controlling law in the Circuit, cannot be reconciled with this position. In *Olympic*, the trustee argued, as Trustee does here, that a forward contract is merely an investment or hedging tool against risk of future loss. Pointing to the legislative history, the *Olympic* trustee argued that the statute was designed to protect derivative transactions but not those involving the actual delivery of goods. In *Olympic*, the Fifth Circuit held:

> Although the Trustee points to the fact that the transactions at issue here contemplated actual delivery as evidence that they are not true "forward contracts," courts in other circuits have repeatedly stated that one of the distinguishing characteristics of a forward contract is that the parties expect to make actual delivery...

8

>In sum, we see no reason to adopt the interpretation the Trustee advocates, and distinguish between "financial" forward contracts, and "ordinary purchase and sale" forward contracts, when the statutory language makes no such distinction.[15]

The statutory removal of all contract board of trade or commodity exchange contracts from the safe harbor provisions of the Bankruptcy Code distinguishes between on-exchange futures contracts and off-exchange forward contracts, with only the latter governed by the Bankruptcy Code's provisions. Thus, delivery of product is not the distinguishing feature of a forward contract.

Finally, Trustee argues that this contract lacks the hallmarks of a hedging or forward transaction. Despite forward delivery of a commodity at a set price, Trustee argues that the quantity to be delivered is not defined but subject to the demands of MBS. As a result, the contract does not set both the price and quantity to be sold providing an imperfect hedge for MX.

Few cases have addressed the provisions called into question by this case. *Olympic* found that forward contracts were those for the purchase and sale of a specific quantity of product at a specific price. However, the contracts considered by the *Olympic* Court fit this definition completely; thus, *Olympic* did not have to address a contract with less than complete hedging characteristics. Similarly, the decisions of *In re Borden Chemicals and Plastics Operating L.P.*[16] and *Mirant Americas Energy Marketing LP v Kern Oil & Refining Co.*[17] involved contracts for set quantities at set prices.

---

[15] *Olympic, supra* at 741-742.

[16] *In re Borden Chemicals and Plastics Operating L.P.*, 336 B.R. 214 (Bankr. Del. 2006).

[17] *Mirant Americas Energy Marketing LP v. Kern Oil & Refining Co.*, 310 B.R. 568 (Bankr. N.D. Tex. 2004)

The only decision found with a similar factual pattern is that of *In re National Gas Distributors*.[18] In *National Gas*, the contract required the supplier to provide, for a fixed price, all natural gas needed by the debtor over its term. Because the quantity was not set, the debtor argued that the agreement was not a forward contract under the statute. The bankruptcy court agreed, holding that the Wall Street Journal quoted future or commodity contracts by price and quantity. This rationale was first used by the *Olympic* Court, although it was not critical to its finding since the contracts at issue were for set quantities. Nevertheless, the *National Gas* Court found the rationale persuasive and held that a contract for something other than a fixed quantity was not a forward contract.

As explained above, a forward contract is not a futures or commodity contract traded on an exchange. Thus, by looking to quotations contained in the Wall Street Journal, the *National Gas* Court defined a forward contract by exchange rules. Instead, the very contract contemplated by this statute is a contract outside of exchange regulation and therefore outside its formulary for quotation.

Commodity contracts traded on an exchange are traded as investments or hedges.[19] It might make tremendous sense to quote commodities in a uniform manner, such as by set quantity and price, in order to facilitate trading. However, the risks addressed by forward contracts, those between a producer or user and intermediary not otherwise regulated, might be different and vary from

---

[18] *In re National Gas Distributors*, 412 B.R.758 (Bankr. E.D.N.C. 2009).

[19] *Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc.*, 502 F.Supp.806 (D.C.C.D.1980).

10

product to product. By definition these contracts are not subject to exchange rules. Therefore, they are less likely to be uniform.[20]

A *forward* contract (as opposed to a *futures* contract) contemplates transfer of an actual commodity and is hedge for an industry participant, producer or consumer, for the sale or delivery of a commodity.[21] Risk is in the eye of the holder and not all commodities share equal risks. For example, the United States Energy Information Administration notes:

> Businesses operating in the petroleum, natural gas, and electricity industries are particularly susceptible to market risk-or more specifically, price risk–as a consequence of the extreme volatility of energy commodity prices.[22]

It goes on to explain that diversification, long-term contracts, inventory maintenance, and insurance are effective tools in managing market risk (unexpected changes in interest rates, exchange rates, or stock prices); credit/default risk; operational risk (equipment failure or fraud); liquidity risk (inability to pay bills, inability to buy or sell commodities at quoted prices); and political risk (new

---

[20] The glossary on the website of the U. S. Commodity Futures Trading Commission provides:

> Forward Contract: A cash transaction common in many industries, including commodity merchandising, in which a commercial buyer and seller agree upon delivery of a specified quality of and quantity of goods at a specified future date. *Terms may be more "personalized" than is the case with standardized futures contracts* (i.e., delivery time and amount are as determined between the seller and buyer). A price may be agreed upon in advance, or there may be agreement that the price will be determined at the time of delivery.

http://www.cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_f.html (emphasis added).

[21] *Nagel v. ADM Investor Services, Inc.*, 217 F.3d 436 (7th Cir. 2000).

[22] http://www.eia.doe.gov/oiaf/servicerpt/derivative/chapter2.html

11

regulations, expropriation) but these traditional approaches do not work well for managing price risk.[23]

The above report indicates that the primary risk to those purchasing electricity is price volatility, not supply. As a result, a contract that locks in a set price is a hedge against the primary risk to both buyer and seller. If such a premise were proven, the contract at issue might well fall within the bounds of a forward contract because it would manage the risk most prevalent for the commodity.

With no specific criteria contained in the statute to govern the terms of a "forward contract," this Court is not prepared to take a one size fits all approach to its definition. Instead, industry standards, risks, and market practices should govern the criteria necessary to define any particular contract as fitting within the statute's definition. However, because this is a motion for summary judgment, outside evidence of market risk and industry norms, even in the form of government reports, are beyond its consideration and scope.

For this reason, the Court holds that material facts are in dispute regarding the nature, scope and terms customarily contained in a forward agreement for electricity not otherwise regulated by a contract board of trade. As a result, summary judgment is denied and this issue is referred to trial on the merits. A separate order will be rendered in accordance with this Memorandum Opinion.

New Orleans, Louisiana, May 7, 2010.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[23] *Id.*